```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| BILLY RON PHILLIPS, | ) | |
| | ) | |
|     Plaintiff, | ) | Civil No. |
| | ) | 5:19-CV-185-JMH |
| v. | ) | |
| | ) | |
| EMILY PRICE, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
|     Defendants. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Billy Ron Phillips is a resident of Indianapolis, Indiana. Proceeding without counsel, Phillips filed a civil rights complaint against prison officials regarding the revocation of his right to visit his brother, Donald Phillips, who is incarcerated at the Northpoint Training Center ("NTC") located in Burgin, Kentucky.[1] [DE 1]. Defendants, through counsel, have filed a motion styled as a "Response and Motion to Dismiss" seeking dismissal of Plaintiff's Fourteenth Amendment Due Process claim. [DE 18]. The Court subsequently converted Defendants' motion, [DE 18], to a motion for summary judgment pursuant to Federal Rule of Civil

---

[1] According to Defendants, Donald Phillips has since been transferred and is currently housed at the Kentucky State Penitentiary in Eddyville, Kentucky. [DE 18 at 1]. However, the Kentucky Department of Corrections' Kentucky Offender Online Lookup System ("KOOL") indicates that Donald Phillips is currently incarcerated at NTC. *See* http://kool.corrections.ky.gov/KOOL (last viewed on August 7, 2020).

1

Procedure 56. [*See* DE 20]. For the following reasons, Defendants' motion, [DE 18], shall be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Viewing the facts in the light most favorable to the Plaintiff, Plaintiff alleges that, on February 17, 2019, he drove from his home in Indianapolis with his teenage daughter to visit his brother, Donald Phillips, at NTC. [DE 21].[2] According to Plaintiff, upon arrival at NTC, he parked his vehicle in the visitor parking area and proceeded to an administration building as directed. In the administration building, Plaintiff was first directed to a bank of wall lockers where visitors are to leave personal items (including vehicle keys), then he and his daughter passed through a metal detector, after which they were both frisked-searched. Plaintiff states that Defendant Emily Price searched his daughter.

After being searched, Plaintiff and his daughter were directed to another building where the NTC's visiting room is located. Plaintiff, his daughter, and his brother then had an "uneventful" two-hour visit.

---

[2] Although Plaintiff's complaint alleges that the incident giving rise to his claims occurred on February 2, 2019, [DE 1], the documentation attached to his complaint indicates that the incident occurred on February 17. [DE 1-1]. In addition, in his response to Defendants' motion, Plaintiff also states that the incident occurred on February 17. [DE 21 at 2].

Once the visit ended, Plaintiff states that he and his daughter returned to the administration building to retrieve his car keys, where he was confronted by Price and two unidentified male guards. One of the unidentified male guards told Plaintiff that Price thought that "he smelled like marijuana," and that, while the other unidentified guard did not agree with Price's assessment, he asked Plaintiff if he would consent to a search of his vehicle. Plaintiff refused.

In their motion to dismiss, Defendants also claim that staff detected the scent of marijuana coming from Plaintiff's vehicle as he and his daughter were leaving the property. [DE 18 at 2]. However, Plaintiff disputes this assertion, and further states that the entire incident took place in the administration building before Plaintiff and his daughter had even reached the parking lot. [DE 21 at 3]. To be sure, Defendants' statement in their motion that unidentified staff detected the scent of marijuana coming from Plaintiff's car is unsupported by any citation to any evidence in the record, such as an affidavit or declaration from the staff who purported to smell marijuana. Regardless, as this matter is before the Court on Defendants' motion to dismiss, this question of fact is construed in Plaintiff's favor.

After Plaintiff refused to consent to the search of his vehicle, he alleges that Price executed a "Visit Refusal or

Termination Form," which imposed a temporary suspension on Plaintiff's visitation privileges for refusing to consent to a vehicle search, requiring written approval by the Warden (or a designee) for future visits. [DE 1 at 5; DE 1-1 at 2]. Plaintiff states that he appealed the "decision" to Defendant Brad Adams, who then forwarded it Defendant Cochran. [DE 1 at 5]. Plaintiff states that, in response to his appeal, Cochran not only sanctioned the actions already taken, but "expanded and exasperated them" by making the "temporary ban" on Plaintiff's right to visit his brother permanent. [DE 1 at 5; DE 1-1 at 5, 6]. Thus, Plaintiff claims that permanent suspension was imposed by Defendants in retaliation for his exercise of his constitutional right to refuse to consent to search and his appeal. [DE 1 at 5-6].

Plaintiff filed his complaint on April 25, 2019. [DE 1]. In his complaint, Plaintiff claims violations of his First, Fourth, and Fourteenth Amendment rights and, as relief, requests declaratory and injunctive relief reinstating Plaintiff's visitation privileges, as well as monetary damages for the intentional violation of his constitutional rights. [DE 1 at 6].[3]

---

[3] In June 2019, this action was dismissed due to the apparent failure of Plaintiff to pay the filing and administrative fees. [DEs 6, 7]. However, shortly thereafter, the Court was notified that Plaintiff had in fact paid the requisite fees, so this action was reopened, and summonses were issued. [DEs 9, 10].

On October 15, 2019, Defendants filed the instant motion, styled as a "Response and Motion to Dismiss." [DE 18]. Although styled as a motion to dismiss, Defendants' motion does not cite to any specific provision of the Federal Rules of Civil Procedure pursuant to which it was filed. Nevertheless, Defendants rely upon exhibits extrinsic to the pleadings in support of their motion. Thus, the Court previously notified the parties that, pursuant to Federal Rule of Civil Procedure 12(d), the motion to dismiss the complaint would be treated as a motion for summary judgment filed under Rule 56 of the Federal Rules of Civil Procedure. [DE 20]. *See also* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). Plaintiff has filed a Response to Defendants' converted motion for summary judgment. [DE 21]. Defendants did not file a reply to Plaintiff's response and the time for doing so has now expired. Thus, this matter has been fully briefed and is ripe for review.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d

378, 383 (6th Cir. 2014). Because Phillips is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Here, as the Court previously notified the parties [DE 20], to the extent that Defendants rely on exhibits extrinsic to the pleadings, the Court will treat Defendants' motion to dismiss the complaint as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d). A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them

when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

### III. DISCUSSION

In their Motion to Dismiss, Defendants seek dismissal of Plaintiff's Fourteenth Amendment Due Process claim, arguing that Plaintiff has no liberty interest in inmate visitation that is protected by the Due Process Clause of the Fourteenth Amendment. [DE 18].[4] Defendants further argue that, even if there were a protected liberty interest at issue, Plaintiff had ample notice of the applicable visitation policies and ample warning of the possible consequences of noncompliance to support a permanent suspension of his visitation privileges. [*Id.*].

Defendants are correct that Plaintiff does not have a liberty interest in the right to visit an inmate that is protected by the Due Process Clause. In *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989), the United States Supreme Court specifically

---

[4] While Defendants' motion requests dismissal of the entire action, the motion only addresses Plaintiff's Fourteenth Amendment Due Process claim and makes no mention of Plaintiff's First Amendment retaliation claim or his Fourth Amendment claim. [DE 18].

considered whether Kentucky prison regulations give state inmates a liberty interest in receiving certain visitors. In *Thompson*, the regulations at issue provided that visitors to the Kentucky State Reformatory may be denied entry if his or her presence would constitute a "clear and probable danger to the safety and security of the institution or would interfere with the orderly operation of the institution." *Id*. at 457. The nonexhaustive list of reasons for excluding visitors included that the visitor had a past history of disruptive conduct or that that visitor had previously violated the institution's visiting policies. *Id*. at 457, n.2. Two particular incidents led to the litigation in *Thompson* – the denial of visitation for six months to an inmate's mother who had brought a person to the prison that had been barred for smuggling contraband, and the denial of visitation for a limited time to another mother and friend of an inmate after the inmate was found with contraband after a previous visit by the two women. In both instances (as in this case), the visitation privileges were suspended without a hearing. *Id*. at 458.

A class of inmates sued, claiming in part that the suspension of visitation privileges without a hearing violated the Due Process Clause of the Fourteenth Amendment. *Id*. The Supreme Court rejected this argument, first noting that it could not "seriously be contended, in light of our prior cases[,] that an inmate's interest

8

in unfettered visitation is guaranteed directly by the Due Process Clause." *Id*. at 460. Thus, "[t]he denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause." *Id*. at 461 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).

In addition, while a State may create "a protected liberty interest by placing substantive limitations on official discretion," *id.* at 462 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)), the State did not do so here, as the applicable prison regulations did not contain "'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest." *Id*. at 463 (citation omitted). While the regulations and procedures at issue did contain "substantive predicates" that were "undoubtedly...intended to guide the duty officer's discretion in making the ultimate decision," the prison regulations "stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met." *Id*. at 464. Accordingly, "[t]he overall effect of the regulations is not such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one

9

of the listed conditions." *Id*. at 464-64. For these reasons, the prison visitation regulations did not establish a liberty interest entitled to the protections of the Due Process Clause.

As in *Thompson*, the visitation regulations at issue here (which are similar to those in *Thompson*) do not require any particular result upon a finding that substantive predicates are met, thus the enforcement of the visitation policy is left to the discretion of prison officials. In addition, although *Thompson* addressed the liberty interest belonging to the prisoner, in *Spear v. Sowders*, 71 F.3d 626 (6th Cir. 1995), the United States Court of Appeals for the Sixth Circuit considered the issue from the perspective of the prison visitor, explaining:

> It is clear that a *prisoner* does not have a due process right to unfettered visitation. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989...A fortiori,* a citizen simply does not have a right to unfettered visitation of a prisoner that rises to a constitutional dimension. In seeking entry to such a controlled environment, the visitor simultaneously acknowledges a lesser expectation of privacy. *Blackburn v. Snow,* 771 F.2d 556, 565 (1st Cir. 1985).

*Spear*, 71 F.3d at 630 (emphasis in original).

Thus, based on *Thompson* and *Spear*, the Court concludes that Plaintiff does not have a liberty interest protected by the Due Process Clause to unfettered visitation with an inmate. For these reasons, to the extent that Defendants seek dismissal of

Plaintiff's Fourteenth Amendment claim, their motion for summary judgment will be granted.

Defendants' motion does not address either Plaintiff's First Amendment retaliation claim or his Fourth Amendment claim, claims that are separate from Plaintiff's Due Process claim. Thus, these claims remain pending.

## IV. CONCLUSION

For all of the foregoing reasons, the Court finds that Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment Due Process claim. Thus, their motion to dismiss, which was previously converted to a motion for summary judgment, [DE 18], will be granted and Plaintiff's Fourteenth Amendment Due Process claim will be dismissed with prejudice. However, Plaintiff's claims arising under the First and Fourth Amendments remain pending.

Accordingly, it is hereby **ORDERED** as follows:

1) Defendants motion to dismiss, previously converted to a motion for summary judgment, [DE 18], is **GRANTED**;

2) Plaintiff's Fourteenth Amendment Due Process claim is **DISMISSED WITH PREJUDICE**;

3) Plaintiff's claims arising under the First and Fourth Amendments **REMAIN PENDING**; and

11

4) Defendants shall answer or otherwise respond to Plaintiff's remaining claims within 21 days from the date of this Order.

This the 11th day of August, 2020.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge