UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

BILLY RON PHILLIPS,                  )
                                     )
        Plaintiff,                   )        Civil No. 5:19-185-JMH
                                     )
V.                                   )
                                     )
EMILY PRICE, *et al.*,               )        **MEMORANDUM OPINION**
                                     )        **AND ORDER**
        Defendants.                  )

\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\*

This matter is before the Court for consideration of a Motion for Judgment on the Pleadings filed by Defendants Brad Adams, Mendalyn Cochran, Johnathan R. Grate, Ronnie Hanes, and Emily Price (collectively, "Defendants"), each of whom are sued in their individual and official capacities. [R. 32] Plaintiff Billy Ron Phillips has filed a response objecting to Defendants' motion. [R. 36] Also pending is a "Motion for Summary Judgment on Liability" filed by Plaintiff [R. 33], to which Defendants have filed a response. [R. 34] Neither party has filed a reply to the responses filed opposing their respective motions and the time for doing so has expired. Thus, both motions are ripe and ready for review.

## I.   Defendants' Motion for Judgment on the Pleadings

As an initial matter, Plaintiff's sole objection to Defendants' motion is that it is procedurally improper, as the

1

Court already rejected Defendants' attempt to file a second motion to dismiss prior to filing an Answer. [R. 36] It is true that Defendants' second pre-Answer motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) was prohibited by Fed. R. Civ. P. 12(g)(2). [R. 30]. However, Defendants have now filed an Answer to the Complaint. [R. 31] Fed. R. Civ. P. 12(c) specifically provides that "[a]fter the pleadings are closed … a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). *See also Swart v. Pitcher,* 9 F.3d 109 (table), 1993 WL 406802 at *3 (6th Cir. 1993) ("While defendants could still raise [an affirmative defense] in their answer, in a motion for judgment on the pleadings, in a summary judgment motion, or at trial, they could not raise the defense in a second pre-answer motion to dismiss."). Thus, Plaintiff's objection to Defendants' motion for judgment on the pleadings is without merit.

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed under the same standards as a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). Thus, as with a Rule 12(b)(6) motion to dismiss, to survive a Rule 12(c) motion for judgment on the pleadings, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Hindel*, 875 F.3d at 346-47 ("To survive a Rule 12(c) motion, 'a complaint must contain direct or inferential allegations respecting all material elements under some viable legal theory.'") (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).

When considering a motion for judgment on the pleadings, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The pleading standard for a civil complaint set forth by Fed. R. Civ. P. 8 "does not require detailed factual allegations, but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). In addition, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (2007).

Because Plaintiff is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012). Even so, the Court "need not

3

accept as true legal conclusions or unwarranted factual inferences." *Moderwell v. Cuyahoga Co., Ohio*, 997 F.3d 653, 659 (6th Cir. 2021) (quotations omitted). A Rule 12(c) motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (quotations omitted).

A.   Plaintiff's Complaint

Plaintiff filed his complaint against prison officials regarding the revocation of his right to visit his brother, Donald Phillips, who is currently incarcerated at the Northpoint Training Center ("NTC") located in Burgin, Kentucky. [R. 1] Plaintiff alleges that, on February 17, 2019, he and his teenage daughter visited his brother at NTC. After parking his vehicle in the visitor parking area, Plaintiff and his daughter proceeded to an administration building, where they left their personal items in a locker, passed through a metal detector, and were frisked-searched by Defendant Emily Price.

After their visit with Plaintiff's brother, Plaintiff and his daughter returned to the administration building to retrieve his car keys, where he was confronted by Price and two unidentified male guards. One of the guards told Plaintiff that Price thought that he smelled like marijuana, and, while the other guard did not agree with this assessment, he asked Plaintiff if he would consent

to a search of his vehicle.[1] Plaintiff refused. Price then issued a "Visit Refusal or Termination Form," which imposed a temporary suspension on Plaintiff's visitation privileges for refusing to consent to a vehicle search. This temporary suspension also required written approval by the Warden (or a designee) for future visits. [R. 1 at p. 5; R. 1-1 at p. 2]

Plaintiff appealed this decision to Defendant Brad Adams, who then forwarded it to Defendant Cochran. According to Plaintiff, in response to this appeal, Cochran not only approved the actions already taken, but "expanded and exasperated them" by making the "temporary ban" on Plaintiff's right to visit his brother permanent. [R. 1 at p. 5; R. 1-1 at p. 5, 6] Thus, Plaintiff claims that the permanent suspension was imposed by Defendants in retaliation for his exercise of his constitutional rights to refuse to consent to a search and to appeal his initial temporary suspension. [R. 1 at p. 5-6]

Based on these allegations, Plaintiff's complaint brings claims for violations of his First, Fourth, and Fourteenth

---

[1] Defendants' repeated claim that Plaintiff actually did smell like marijuana may be disregarded, as it is both unsupported by any citation to objective evidence in the record and, more importantly at this stage, is a factual issue disputed by Plaintiff. On a motion for judgment on the pleadings, the Court must view the complaint in the light most favorable to Plaintiff. *See D'Ambrosio*, 747 F.3d at 383.

Amendment rights and, as relief, requests declaratory and injunctive relief reinstating Plaintiff's visitation privileges, as well as monetary damages for the intentional violation of his constitutional rights. [R. 1 at p. 6]

In their motion for judgment on the pleadings, Defendants seek dismissal of Plaintiff's First and Fourth Amendment claims.[2] Specifically, Defendants argue that: (1) Plaintiff's official capacity claims must be dismissed on sovereign immunity grounds; (2) Plaintiff's First Amendment "freedom of association" claim fails as a matter of law; (3) Plaintiff fails to state a claim for violation of his Fourth Amendment rights; and (4) Plaintiff fails to state a claim for First Amendment retaliation. For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

B.   Sovereign Immunity Does Not Preclude Plaintiff's Claims for Injunctive Relief

In their motion for judgment on the pleadings, Defendants argue that Plaintiff may not pursue claims against them in their respective official capacities, as such claims are barred by the doctrine of sovereign immunity. [R. 32 at p. 2] Defendants are correct that an official capacity claim against a state officer is

---

[2] The Court has already dismissed Plaintiff's Fourteenth Amendment Due Process claim.  [R. 23]

actually a claim directly against the state agency which employs them. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent.") (internal quotation marks omitted). Defendants are also correct that, to the extent that Plaintiff seeks *monetary* damages against the Defendants in their official capacities, an agency of the Commonwealth of Kentucky is not subject to suit for damages under § 1983 in federal court, both because a state agency is not a "person" subject to liability under § 1983, and because the Eleventh Amendment deprives federal district courts of subject matter jurisdiction over a claim for money damages against a state and its agencies. *Gibbons v. Kentucky Dept. of Corrections*, No. 3:07-cv-P697-S, 2008 WL 4127847, at *1 (W.D. Ky. Sept. 4, 2008); *Scott v. Kentucky Department of Corrections*, No. 08-cv-104-HRW, 2008 WL 4083002, at *2 (E.D. Ky. Aug. 29, 2008) ("[T]he Eleventh Amendment has also been interpreted to extend immunity to State employees sued for damages in their official capacities.").

However, it does not follow that Plaintiff's "official capacity" claims must be dismissed in their entirety, as

Plaintiff's complaint specifically seeks declaratory and injunctive relief in the form of an order directing that Plaintiff's visitation privileges be reinstated. [R. 1 at p. 6] While the Eleventh Amendment bars suits against the States and their respective entities, an exception exists for claims of prospective injunctive relief. *See, e.g., Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n. 10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (citing *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14 (1985); *Ex parte Young,* 209 U.S. 123, 159–160 (1908)); *Cady v. Arenac County*, 574 F.3d 334, 344 (6th Cir. 2009).

Thus, because Plaintiff seeks prospective injunctive relief in the form of the reinstatement of his visitation rights (which he alleges were revoked in violation of his constitutional rights), his claims for injunctive relief against the Defendants in their official capacities are not barred by the Eleventh Amendment. *See Papasan v. Allain*, 478 U.S. 265, 276 (1986) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). *See also Ladd v. Marchbanks*, 971 F.3d 574, 580 (6th Cir. 2020) ("But when plaintiffs seek an injunction to prevent prospective violations of federal law, the state's sovereign immunity does not shield its officers."); *Seum v.*

*Osborne*, 348 F.Supp.3d 616, 627 (E.D. Ky. 2018) ("Under *Ex Parte Young*, individuals who are 'officers of the state' who are violating or threatening to violate the Federal Constitution 'may be enjoined by a Federal court of equity from such action.'") (quoting *Ex Parte Young*, 209 U.S. at 155-56)); *Miller v. Davis*, 267 F.Supp.3d 961, 987 (E.D. Ky. 2017).

For these reasons, Plaintiff may pursue claims seeking prospective injunctive relief against Defendants in their respective official capacities.

C.   Plaintiff's First Amendment "Freedom of Association" Claim

In his response to Defendants' first motion to dismiss, Plaintiff argued that Defendants infringed upon his "constitutional right to maintain an intimate familial relationship with his only brother," which he characterized as a First Amendment claim. [R. 21 at p. 4-5] Defendants argue that Plaintiff's First Amendment "Freedom of Association" claim fails, as Plaintiff has no constitutional right to visit his brother in prison. [R. 32 at p. 3-7]

The "freedom of intimate association" protected by the Constitution is "a privacy interest derived from the Due Process Clause of the Fourteenth Amendment but also related to the First Amendment." *Anderson v. City of LaVergne*, 371 F.3d 879,

9

881 (6th Cir. 2004).  The Court has already dismissed Plaintiff's Fourteenth Amendment Due Process claim, as Plaintiff does not have a liberty interest in the right to visit an inmate that is protected by the Due Process Clause.  [R. 23 at p. 7-10, citing *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989); *Spear v. Sowders*, 71 F.3d 626 (6th Cir. 1995)]

Moreover, "[p]rison officials may impinge on a prisoner and his visitor's First Amendment rights if their actions are reasonably related to legitimate penological interests."  *See Thacker v. Campbell*, 165 F.3d 28 (6th Cir. 1998).  *See also Turner v. Safley*, 482 U.S. 78, 89 ("In our view, such a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'") (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128).

In their motion, Defendants state that the Kentucky Department of Corrections has implemented certain policies, including its policies regarding visitation and visitor search requirements, to ensure that no dangerous and/or prohibited items are being smuggled into the facility. [R. 32 at p. 5] In his objection to Defendants' motion [R. 36], Plaintiff does not dispute that these are legitimate penological interests, nor that the policies at issue are reasonably related to those interests.

Indeed, Plaintiff does not address this issue at all. "As a practical matter, 'it is well understood...that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff fails to address as conceded.'" *Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759-60 (E.D. Ky. 2019), *reconsideration denied,* No. 2:17-CV-226-WOB-CJS, 2019 WL 12105661 (E.D. Ky. June 18, 2019) (quoting *Rouse v. Caruso*, No. 6-cv-10961-DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011)). *See also Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (noting that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived). Thus, because Plaintiff failed to address this argument, the Court may consider any objections to it waived.

Even absent the implied waiver, the Court agrees that Defendants' visitation policies – including its requirements that visitors and/or their vehicles are subject to being searched – are reasonably related to the legitimate penological interests in the safety and security of inmates, staff, visitors, and the institution. For these reasons, Plaintiff's First Amendment claim based on the alleged infringement of his right to intimate association with his brother fails.

D.  <u>Plaintiff's Fourth Amendment Claim</u>

In his complaint, Plaintiff generally claims that his Fourth Amendment rights were violated, although he fails to specify the factual basis for this claim. [R. 1 at p. 5-6 (stating only that "as described above, Defendants…have, and continue to knowingly, willfully, and intentionally violate Petitioner's constitutional rights pursuant to the First, Fourth, and Fourteenth Amendments of the United States Constitution")]  Defendants seek dismissal of Plaintiff's Fourth Amendment claim, as Plaintiff fails to adequately allege that either a search or a seizure occurred, or that his Fourth Amendment rights were otherwise violated.

While Plaintiff's response to Defendants' motion does not address this argument, he explains in his own "Motion for Summary Judgment on Liability" [R. 33] that "Defendants 'seized' Plaintiff for Fourth Amendment purposes when they detained him to demand that he sign a 'voluntary consent to search form.'" [*Id.* at p. 1] According to Plaintiff's theory, because he and his daughter were leaving prison grounds, this "seizure" served no legitimate law enforcement interest and, therefore, was unreasonable and in violation of the Fourth Amendment. [*Id.*]

The most fundamental flaw of Plaintiff's "unconstitutional seizure" theory set forth in his motion for summary judgment is that it is not pled in his complaint. A civil complaint must set

12

forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. *See also* Fed. R. Civ. P. 8.

While Plaintiff's complaint generally alleges that his Fourth Amendment rights were violated, his allegations refer to his right to refuse to consent to be searched (a right that his complaint concedes was honored, as he was allowed to leave the facility without his automobile being searched). Indeed, the word "seizure" does not even appear in his complaint. [R. 1] Plaintiff's conclusory claim that his Fourth Amendment rights were violated, without any accompanying factual allegations to support such a claim, is a form of conclusory pleading that is insufficient to satisfy the minimum pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

This remains true even with the additional latitude afforded to pro se litigants. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("More than bare assertions of legal conclusions is ordinarily required to satisfy federal notice

13

pleading requirements."); *Kamppi v. Ghee*, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. May 14, 2000) ("Thus, the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations."). This reason alone justifies dismissal of Plaintiff's Fourth Amendment claim.

However, even if Plaintiff had alleged his "unreasonable seizure" claim in his complaint, Defendants' request that Plaintiff sign a "voluntary consent to search" form simply does not rise to the level of a "seizure" for Fourth Amendment purposes. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement…'through means intentionally applied.'" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Florida v. Bostick,* 501 U.S. 429, 434 (1991); *Terry v. Ohio,* 392 U.S. 1, 19, n. 16 (1968)).

In the absence of the application of physical force (which Plaintiff does not allege occurred here), an officer may make a seizure by a show of authority, but there is no seizure in these circumstances "without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Brendlin*, 551 U.S. at 254 (citations omitted).

14

Here, Plaintiff does not allege that he submitted to any "show of authority" resulting from the request that he sign a voluntary consent to search form.  In fact, quite the opposite, Plaintiff alleges that he exercised his Fourth Amendment right to refuse to consent to a search and left the prison grounds. [R. 33 at p. 2] While he also generally argues that "consent to search may not be coerced by explicit or implicit means, by implied threat or covert force," [*id.*], he does not allege that his consent to search was coerced here. In fact, he alleges that he did *not* consent and he was *not* searched. His argument that he was then retaliated against for exercising his Fourth Amendment right to refuse to consent to a search is, if anything, a First Amendment retaliation claim, not a Fourth Amendment claim.

For all of these reasons, Plaintiff's Fourth Amendment claim fails, even if the Court considers Plaintiff's additional allegations made in his "motion for summary judgment on liability." Because Plaintiff's complaint fails to allege facts sufficient to state a claim against Defendants for violation of his Fourth Amendment rights, Defendants' motion for judgment on the pleadings with respect to this claim will be granted and Plaintiff's Fourth Amendment claim will be dismissed.

E.   <u>Plaintiff's First Amendment Retaliation Claim</u>

Defendants argue that Plaintiff fails to "allege or meet" the requirements for a claim of retaliation, thus his claim must be dismissed. However, to the extent that Defendants suggest that Plaintiff has failed to "prove" his retaliation claim, they overlook that this is a pre-discovery motion for judgment on the pleadings – not a motion for summary judgment – thus Plaintiff does not have to prove his claim at this stage. Rather, the Court only examines that facts alleged in his complaint and evaluates whether, construing the facts in Plaintiff's favor, he has adequately alleged a claim of retaliation for which relief may be granted.

Contrary to Defendants' argument, Plaintiff's retaliation claim is not merely a reiteration of his Fourth Amendment "right to refuse consent" claim. To succeed on a First Amendment retaliation claim, a plaintiff must show:

> (1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct.

*Sensabaugh v. Halliburton*, 973 F.3d 621, 627-28 (6th Cir. 2019) (quoting *Bell v. Johnson*, 308 F.3d 594, 602 (6th Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

16

Thus, to prevail on a First Amendment retaliation claim:

> a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.,* at 260 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway").

*Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Consideration of causation is not always straightforward, *id*. at 1723, and is particularly complicated in a prison setting where, because of the need for prison security, "the Fourth Amendment does not afford a person seeking to enter a penal institution the same rights that a person would have on public streets or in a home." *Spear*, 71 F.3d at 629-30. *See also id*. at 630 ("In seeking entry to such a controlled environment, the visitor simultaneously acknowledges a lesser expectation of privacy."). Moreover, the Sixth Circuit has specifically noted that "[a] defendants' motivation for taking action against the plaintiff is usually a matter best suited for the jury." *Buddenberg v. Weisdack*, 939 F.3d 732, 741 (6th Cir. 2019) (citations omitted).

17

Here, Plaintiff's complaint alleges that his visitation privileges were initially suspended solely because he denied Defendants' request to voluntarily consent to a search of his car, a right grounded in the Fourth Amendment. *See Spear*, 71 F.3d at 632 (recognizing that the Fourth Amendment protects an individual's privacy interest in an automobile). Plaintiff further alleges that his visitation privileges were initially only temporarily, not permanently, suspended and that it was only after he appealed this decision to the Warden – which he had the right to do under the First Amendment – that she made the temporary ban permanent. [*Id.*] [R. 1 at p. 5; R. 1-1 at p. 2] *See Thacker v. Campbell*, 165 F.3d 28 (Table), 1998 WL 537599 at *2.

If, as Plaintiff alleges, Defendants imposed the permanent ban on his visitation rights in response to his exercise of his First and/or Fourth Amendment rights, that, in itself, is a violation of the First Amendment. *Id.* ("Retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment.") Thus, Plaintiff has alleged sufficient facts in support of his claims that he was retaliated against for the exercise of his constitutional rights to survive the Defendants' motion for judgment on the pleadings.

To be sure, it is unclear whether Plaintiff will be able to successfully *prove* his claim in light of the particular

18

circumstances of this case. For example, further discovery may shed light on whether Plaintiff implicitly consented to be searched by entering the facility, in light of signs that Defendants claim were present warning him that automobiles are subject to be searched. *Spear*, 71 F.3d at 633 ("We cannot say that the Constitution requires individualized suspicion to search a car on prison grounds, particularly if the visitor has been warned that the car is subject to search."). On the other hand, as the Sixth Circuit pointed out in *Spear*, "it may prove true that there is no sign notifying entrants that their car may be searched, or the cars may be in a secure area to which no prisoner has access…" *Id*. at 633.  It is also possible that Plaintiff is unable to demonstrate the required causal connection between his refusal to consent to the automobile search and/or his appeal of the original temporary suspension and the permanent suspension of his visitation privileges, particularly if, as maintained by Defendants, staff actually detected the scent of marijuana on Plaintiff, thus justifying their request that Plaintiff's vehicle be searched.

Even so, the question before the Court on Defendants' motion for judgment on the pleadings is only whether Plaintiff has *alleged* sufficient facts in support of his retaliation claim; whether or not he is able to elicit proof of these facts is a question for

another day.  Because discovery has yet to occur in this case, dismissal of Plaintiff's retaliation claim at this stage is unwarranted.

## II.  **Plaintiff's Motion for Summary Judgment**

Plaintiff has filed his own "motion for summary judgment on liability," seeking judgment in his favor on his claim that Defendants violated his "Fourth Amendment right to refuse consent to search when they penalized him in perpetuity for his refusal to sign a 'voluntary consent to search form' as he was leaving prison grounds." [R. 33] However, as explained herein, even based on his own allegations, Plaintiff's Fourth Amendment right to refuse to consent to a search was honored, as he was allowed to leave the property without a search of his vehicle. In addition, Plaintiff was not "seized" for purposes of the Fourth Amendment when prison officials requested that he sign the "consent to search" form. Because Plaintiff's complaint fails to state a claim for which relief may be granted for violation of his Fourth Amendment rights, his motion for summary judgment on this claim will be denied.

Plaintiff also seeks judgment in his favor on his First Amendment retaliation and his "freedom of intimate association" claim.  However, the Court has already determined that Plaintiff's First Amendment claim based on the alleged infringement of his

20

right to intimate association with his brother fails as a matter of law.

To the extent that Plaintiff seeks summary judgment on his retaliation claim, a party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). There have been no facts developed in this case at this stage, as there has been no discovery. Again, while the Court concludes that Plaintiff has adequately *alleged* a retaliation claim, whether or not he will be able to support this claim with any evidence has yet to be seen. Because summary judgment on Plaintiff's retaliation claim is unwarranted at this stage, Plaintiff's motion will be denied.

### III. <u>Referral to Magistrate Judge</u>

With respect to Plaintiff's remaining First Amendment retaliation claim, Defendants have filed an answer to Plaintiff's complaint. [R. 31] Thus, the Court will refer this matter to a United States Magistrate Judge for pretrial management.

For all of these reasons, the Court, being fully and sufficiently advised, **HEREBY ORDERS** as follows:

1. The Motion for Judgment on the Pleadings filed by Defendants [R. 32] is **GRANTED IN PART** and **DENIED IN PART**.

   a. To the extent that Defendants' Motion seeks dismissal of Plaintiff's First Amendment "Freedom of Intimate Association" Claim and his Fourth Amendment Claims, Defendants' motion is **GRANTED** and these claims are **DISMISSED**.

   b. To the extent that Defendants' Motion seeks dismissal of Plaintiff's First Amendment retaliation claim, Defendants' Motion is **DENIED**. Plaintiff's First Amendment retaliation claim **REMAINS PENDING** against the Defendants in both their individual and official capacities.

2. Plaintiff's Motion for Summary Judgment on Liability [DE 33] is **DENIED**.

3. This matter is **REFERRED** to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) to conduct all pretrial proceedings, including preparing proposed findings of fact and conclusions of law on any dispositive motions.

4. The Clerk of the Court shall **ASSIGN** this matter to a Magistrate Judge.

This the 13 day of August, 2021.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge